MÉNDEZ & COMPANY, demandante-contrademandada y apelada, *v.* JULIO L. BUSÓ, demandado-contrademandante y apelante.

No. 5597.—*Sometido:* Abril 28, 1932. *Resuelto:* Diciembre 24, 1932.

*R. A. Arroyo Ríos,* abogado del apelante; *Monserrat & Monserrat,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Méndez & Co., una sociedad mercantil domiciliada en San Juan, y Julio L. Busó, un agricultor de Humacao, celebraron un contrato por virtud del cual el segundo vendió a la primera sesenta y cinco mil cocos a veinte y un dollars cincuenta centavos el millar.

Alegando que los cocos no le fueron entregados, Méndez & Co. demandó a Busó en reclamación de $1,087, costas, gastos y honorarios de abogado. La suma reclamada está formada por las de $108, valor de sacos vacíos proporcio-

nados, $30 pagados por falso flete, $400 adelantados a cuenta del precio de los cocos, $249 invertidos en la recolecta y monda de los mismos y $300 por daños y perjuicios.

En su contestación se limitó el demandado a admitir el primer hecho de la demanda relativo a las partes y negó todos los demás. Formuló contrademanda reclamando a su vez de la demandante $997.50 balance del precio de los cocos que le vendiera, $2,280 por pérdida de los cocos que viciosamente le embargó y $25,000 por daños y perjuicios que le causó además la acción judicial que el demandante le siguiera; en junto $33,277.50 con más las costas, gastos y honorarios de abogado.

El contrato de compraventa fué verbal. Sostiene el demandante que se convino que la entrega de los cocos quedaba sujeta a sus órdenes; que el 6 de septiembre de 1928 ordenó en efecto que empezara la recolección y monda para recibirlos el 17 del propio mes, y que no obstante haber cumplido por su parte todos los términos del contrato, el demandado bajo fútiles pretextos se negó y se niega a entregarle las frutas que le vendiera. Y sostiene el demandado que vendió a la demandante los cocos en cuestión y la demandante los recibió pidiéndole que le permitiera dejarlos en el sitio en que estaban amontonados para recogerlos en cualquier momento y que así las cosas sobrevino el 13 de septiembre de 1928 el huracán de San Felipe que ocasionó la pérdida de las frutas. En una palabra, alega la demandante que no llegó a verificarse la entrega y alega el demandado que la entrega se verificó y los cocos se perdieron cuando ya pertenecían a la demandante.

Fué el pleito a juicio. Practicóse prueba testifical y documental por ambas partes, y la corte, basándose principalmente en la última, dictó sentencia favorable a la demanante por la suma de $651. Eliminó de la reclamación el valor de los sacos y el de los daños y perjuicios y parte de lo que se alegó como gastado en la recolecta y monda de los cocos. La contrademanda fué declarada sin lugar.

No conforme la parte demandada apeló, señalando en su alegato la comisión de tres errores, el primero cometido al apreciar la prueba, el segundo al admitir como prueba cierto documento y el tercero al declarar la contrademanda sin lugar.

El primero no fué cometido. Tampoco el tercero. Sí el segundo. Expuestas rápidamente, las razones que tenemos para llegar a esas conclusiones son las que siguen:

Conocemos por la referencia que hemos hecho a las alegaciones en qué se basa la reclamación de la demandante y cómo se defiende de ella el demandado, atacando a su vez. Veamos qué demuestra la prueba.

El primer testigo que declaró por parte de la demandante fué su socio Francisco Guerra. Cuando terminó, los abogados de ambas partes estipularon que Emiliano Méndez declararía:

"Que Méndez y Compañía de la cual es socio gestor, celebró un contrato con el Sr. Julio L. Busó, para la compraventa de SESENTA Y CINCO MIL cocos a razón de VEINTE Y UN DÓLARES CON CINCUENTA CENTAVOS el millar al barrer, sujeta la entrega de estos cocos a las órdenes de Méndez y Cía., y que en su oportunidad Méndez y Cía, lo requirió a él para la entrega de dichos cocos y éstos no fueron entregados."

En esa estipulación está resumida también la declaración de Guerra. Ella presenta la prueba testifical de la demandante sobre los términos del contrato oral celebrado.

El demandado declaró personalmente en el juicio como sigue:

". . . que el contrato se hizo en los primeros días del mes de agosto y que desde entonces quedaron los cocos por cuenta y riesgo de los compradores; que nunca vendió sus cocos sino con esa condición; que el precio convenido fué de VEINTE Y UN PESOS CINCUENTA CENTAVOS por millar de cocos propios para embarque, siendo por cuenta del vendedor el costo de la monda, pero todo otro gasto era por cuenta de Méndez & Cía., empezando por la clasificación de los cocos y los peones para envasarlos en los sacos y pagar el camión que los condujera a San Juan. Que fué condición especial el que se

recogieran los cocos por Méndez & Cía., dentro de pocos días, estimándose como pocos días lo usual que es de seis a ocho días; que si el contrato se verificó en la primera quincena del mes de agosto, el testigo pensó que ellos procederían a recoger los cocos del quince al veinte de agosto, pero esperándose entre las prórrogas solicitadas y el tiempo en que quedó el Sr. Francisco Guerra en venir a la finca, transcurrió el tiempo sin que viniesen a recoger los cocos.''

Y aportó la declaración de Luis Pereyó para demostrar cuál era la costumbre del lugar en esa clase de contratos. Dijo el testigo:

''. . . que como tal cosechero de cocos, está al tanto de las costumbres y usos en la compraventa de cocos; que lo usual en el negocio es que la persona que va a comprar los cocos, después de arreglar el precio de la venta, el dueño de la finca procede a tumbar sus cocos, los amontona y entonces procede a poner personas para que los monden e inmediatamente después debe estar la persona que ha comprado los cocos, en la finca, para proceder a recoger los mismos.''

Veamos ahora lo que dicen los documentos.

El primero que encontramos es un cheque por $200 de 11 de agosto de 1928 de la demandante a favor del demandado, a cuenta del precio.

Sigue una carta de la demandante al demandado de 15 de agosto, que dice:

''. . . Con referencia a la preparación y embarque de sus cocos, tenemos el gusto de comunicarle que era nuestra intención prepararlos en la próxima semana, pero no habiendo recibido una remesa de sacos que hemos pedido a Nueva York, no nos es posible hacerlo hasta que no lleguen los mencionados sacos, pues las existencias que tenemos en el almacén no alcanzan para la cantidad de cocos que usted tiene. Es muy probable que antes de que cese este mes, se estén preparando y les agradeceríamos nos dijera antes más o menos el total de la producción de sus tumbas, para saber la cantidad de sacos vacíos que tenemos que avisar. Esperando su respuesta, nos suscribimos, . . .''

A ella contestó el demandado el 17 de agosto como sigue:

''. . . Con gusto contesto a su atta. carta avisándoles que el total de cocos puede llegar a sesenta millares. Esperando sus avisos, quedo . . .''

En agosto 23, Guerra escribió al demandado.

". . . He estado esperándote hasta después de las tres, y he tenido que salir. Hoy mandé despachar 500 sacos directamente, a tu finca. La semana entrante espero dar principio a la monda de tus cocos; pero será a mediados de ella. Te avisaré con tiempo cuándo debes empezar. Te saluda, . . ."

El 25 de agosto le dice el demandado a la demandante:

". . . No tengo ninguna de Uds. a que referirme, y me limito a informarles que tengo opción para unos cincuenta mil cocos de la Central Fajardo, de una de las fincas de esta compañía por Luquillo, y más o menos cuarenta mil dentro de pocas semanas. Esta compañía ha estado vendiendo sus cocos al Sr. Biascochea desde hace muchísimo tiempo, y tiene por costumbre vender los cocos 'en la palma', es decir todo gasto, desde la tumba y recolecta hasta el despacho por cuenta del comprador. El amigo Guerra debe estar bastante bien enterado de la producción y calidad de los cocos de Luquillo, así como del costo de tumba, monda, etc., en aquella región. El encargado de la venta de dichos cocos es familia mía y quiere cerrar la venta la semana entrante. Indíqueme el límite máximo que uds. pueden ofrecer para ver si yo puedo hacerles esta compra, pues en este caso no me parece difícil vencer la competencia. Ayer, estando yo en la ciudad, un camión entregó en mi finca un fardo de sacos vacíos, sin dejarme carta ni conduce ni documento alguno que acredite el origen de los sacos. Supongo que son de ustedes y los tengo bajo techo. Esperando sus noticias para dar principio a la monda de los cocos que les tengo vendidos, quedo de Uds. . . ."

Y en agosto 29 la demandante dice y contesta al demandado:

". . . Acabándose de terminar su conferencia telefónica con el Sr. Guerra ayer mismo hemos recibido un cable tan desalentador con referencia al negocio de cocos que hemos resuelto esperar que pasen algunos días del mes de septiembre para proceder a la monda de sus cocos, pues las condiciones del mercado son tales que no nos permiten embarcarlos en los primeros días del mes. Si entre tanto Ud. necesitara alguna cantidad a cuenta de los mismos cocos Ud. sabe que ésta su casa puede facilitársela. Con referencia a los cocos de la Central Fajardo es tan problemático el mercado de cocos este año que todos los compradores están indecisos en hacer compras, contando con mejores precios en el futuro. No obstante, nuestra oferta de $20 en las

palmas queda vigente hasta que Ud. nos diga el resultado de sus gestiones. Según le hemos indicado antes en el momento que resolvamos mondar sus cocos le avisaremos con dos días de anticipación. Esperamos sus noticias sobre el particular y sin objeto para más nos suscribimos . . .''

La carta que sigue es también de la demandante al demandado. Tiene fecha 6 de septiembre y dice:

''. . . Tenemos el gusto de informarle que Guerra piensa embarcar los cocos suyos por el vapor del lunes día 17 del corriente mes, por lo cual le suplicamos que el martes de la entrante semana, dé principio a la monda de dichos cocos. Guerra procurará estar en su finca para ensacarlos y clasificarlos dos días después de haberse empezado la monda o sea el jueves. Guerra le agradecería que le tenga preparado algunos muchachos de los que saben clasificar y sean más rápidos en el trabajo para cuando él llegue no perder tiempo en buscar la gente; también 3 ó 4 hombres que sirvan para llenar y pesar los sacos. Gracias anticipadas por la buena atención que dispense a la presente y sin otro particular . . .''

El 7 de septiembre independientemente el demandado se dirigió a la demandante así:

''. . . Les estimaré que me presten la suma de DOSCIENTOS DÓLARES, a cuenta de los cocos que les vendí y que no han venido a recibir. Mucho he de agradecer reciban estos cocos cuanto antes, pues mientras más tiempo pasen en el suelo, sin mondar, mayor cantidad de nacidos habrá el día de la monda, y esto me perjudica. . . .''

Contestándole la demandante el día 11 como sigue:

''. . . Oportunamente recibimos su atta. del 7 del cte. a la que no contestamos antes esperando al Sr. Guerra, pero en vista de que no ha llegado aún de la isla, hemos decidido enviarle nuestro adjunto cheque a su favor, por $200.00 dejando el resto del contenido de su carta, pendiente hasta que venga el Sr. Guerra, que será mañana o pasado. Rogámosle nos dispense esta pequeña tardanza, y nos reiteramos, . . .''

El 13 de septiembre ocurre el tremendo huracán de San Felipe y el 17 escribe el demandado a la demandante:

''. . . Para poder recoger nuevamente los cocos que les vendí y que reguereteó el ciclón, tengo que hacer varios trabajos de limpieza,

aparte de la reconstrucción de las casitas y ranchos para los peones, y todo esto hoy cuesta el doble si se quiere conseguir quien trabaje. Les estimaré que me sitúen quinientos dólares a cuenta de dichos cocos para poder dar comienzo inmediato a estos trabajos, a ver si puedo hacer entrega de los cocos dentro del más breve plazo . . .''

El 25 del propio mes volvió a escribirles como sigue:

''. . . De la recogida de cocos en mi finca ha resultado que los cocos que me tumbó el ciclón, el montante de cocos secos de embarque que se pueden mondar pasa de ochenta mil, y es muy probable que pase de noventa mil, si no separo muchos para semilla. Los que por su aspecto se sabe que es probable que estén retoñados o a punto de retoñar, no dejaré que sean mondados, pues como estos Uds. no los reciben y no me es posible perderlos, me es de suma conveniencia dejarlos para semillas, como yo les había vendido a ustedes sesenta y cinco mil cocos más o menos, según aviso verbal que dí a su señor Don Emiliano Méndez, resulta que los demás o sea el excedente de los que se habían tumbado no están convenidos en precio y condiciones. En vista de esto, les estimaré me hagan oferta por dichos cocos, bien sea tomados sin mondar o mondados por mi cuenta y entregados en la salida de la finca. Si les parece conveniente, háganme una oferta por el total de cocos recogidos hasta hoy o mañana que se terminará la recolecta, entendiéndose que los secos muy secos que han perdido ya la coronita y que se comprende que están retoñados o a punto de reventar la manzana, son míos y no entran en la venta por necesitarlos yo para semillas. Si hacen esta oferta por el total, debe entenderse que todo gasto, desde la recogida y la monda, etc. etc. son por cuenta de ustedes. Pendiente de sus avisos, dentro del más breve plazo posible, quedo de ustedes, . . .''

Esta última carta aparece contestada por la demandante en septiembre 28, así:

''. . . Nos referimos al contenido de su estimada carta de Sept. 25 en la que nos informa que después de entregarnos los 65,000 cocos que nos tiene vendidos le sobrarán de 20 a 25,000. No le hacemos hoy oferta por la cantidad en exceso de nuestra compra por no hallarse aquí el Sr. Guerra, pero ya Ud. sabe que siempre nos hemos entendido y esperamos no tropezar con la menor dificultad para cerrar con Ud. esa operación a fin de que no tenga que entregar el total de la partida a dos firmas distintas y por tanto en la primera entrevista que se celebre entre Ud. y nosotros trataremos de llegar a un acuerdo res-

pecto de los 20 ó 25,000 cocos que le quedarán después de entregar nuestros 65,000 contratados. Nos preguntan del Norte la fecha en que podemos embarcar el total de los que le tenemos comprado, y necesitando pasar un cable diciéndoles la fecha en que saldrá de aquí la mercancía, suplicámosle ponernos dos letras a vuelta de correo informándonos el día en que puede empezar a mondar para que el Sr. Guerra se apersone en Humacao a ensacar y despachar la mercancía para ésta. . . .''

Tres días después, un elemento extraño interviene y dirige al demandado la siguiente carta:

"San Juan de Puerto Rico, 1°. de octubre de 1928. Sr. Don Julio Busó, Humacao, Puerto Rico. Muy Sr. mío y amigo: Por la presente ofrezco a usted $24.00 por millar, tomados en la finca en el sitio en que se encuentran ahora, por todos los cocos que no tenga comprometidos actualmente y pueda entregarme. Esta oferta quedará firme por cuarenta y ocho horas. Suyo afmo. S. S. (fdo.) Enrique Biascochea.''

Y en 3 de octubre el demandado escribe a la demandante:

". . . Acabo de recibir una carta del 2 d/c a la que me refiero. Tengo que aclararles: PRIMERO: Yo nunca he vendido a ustedes cocos con el entendido de que quedarían bajo mi cuidado esperando ilimitadamente, mientras mejorare el precio del mercado para estos frutos. SEGUNDO: Los 65,000 cocos que les vendí en agosto, a principios del mes, debían esperar en mi finca algunos días, mientras se desocupaba Guerra para venir a recibirlos, y si les sorprendió el huracán sin haberles sido entregados fué porque Uds. prefirieron seguir esperando mejoría en el precio, según dice la carta que Uds. me escribieron. TERCERO: Nunca les dije ni a Uds. ni a nadie, que yo perdería los cocos mondados por orden de Uds. en los días antes del temporal, y que se perdieron porque el temporal los barrió o porque el sol los rajó después de haberlos descubierto y reguereteado el ciclón. Preguntan Uds. que por qué yo no les había abordado en este sentido cuando estuve en su oficina, y tengo que contestarles: Porque había estado confiando en la buena fe de Uds. y creía que recordarían todo lo que he tenido que citarles en mis últimas cartas y más porque esperaba que Uds. supieran soportar sus pérdidas sin pretender que se las aliviara yo. Nunca me agradó mucho la desconfianza que Uds. demostraron al mandar a Guerra a ordenar trabajos en mi finca, y por este motivo hube de suponer que Uds. se guardaban alguna re-

serva, muy silenciosamente para sin necesidad de decírmelo claramente con lenguaje sencillo, hacerme soportar la pérdida o hacerme llevar el asunto por las vías de cobro al alcance de todo el que pueda pagar abogado. A propósito debo decirles que los trabajadores que trabajaron por orden de Guerra, haciendo lo que él ordenó, en mi finca necesitan sus jornales y pretenden someter a Guerra a la acción de la justicia si no viene a pagarles. Dicen Uds. que les están reclamando el embarque de los 65,000 mil cocos, y ahora no sé a quien creer, pues Guerra me dijo que los cocos les habían sido cancelados por cable y que tendrían que perder dinero o venderlos baratos. Mucho lamento tener que decirles lo que este párrafo contiene, y lo siento no por ustedes sino por mí mismo: Si creen que el negocio de cocos es tal como Uds. dicen, y que yo tengo que entregarles los 65,000 cocos y devolverles los $400.00 que me habían anticipado, yo creo que Uds. tienen que perder los cocos que se habían mondado y que se perdieron por las razones que tantas veces he repetido, y si no están conformes, entonces intenten acción judicial contra mí; quién sabe si podrán obtener una sentencia favorable a ustedes que les consuele en sus pérdidas pues yo no tengo con qué consolarlos . . .''

La carta de la demandante al demandado de 2 de octubre a que se refiere la del demandado que se acaba de transcribir no aparece en los autos.

Consta de éstos que después del huracán la demandante encomendó a Agustín Murat la recolección de los cocos, llegando a pagarle $221 en tres partidas, suspendiéndose el trabajo por orden del demandado trasmitida por su empleado Julio Rivera. Ninguna fruta llegó a extraerse de la finca por la demandante. Parece conveniente transcribir lo que sigue de la declaración del testigo Murat:

"REPREGUNTADO este testigo por el abogado del demandado, manifiesta: Que el Sr. Francisco Guerra le dió órdenes para que recogiera unos cocos en la finca de Don Julio Busó; que esas órdenes las recibió después de haber ocurrido el ciclón de San Felipe; que el Sr. Guerra le manifestó que la recogida de esos cocos las iba a pagar la casa de Méndez & Cía. y que por esto entiende el declarante que los cocos serían para ellos; que no puede decir la cantidad de cocos que recogió, porque el testigo estaba trabajando por días; que la finca del Sr. Busó es grandísima y dondequiera se hacía un montón y no puede decir la cantidad de cocos recogida; que entre los cocos había malos

y había buenos, habiendo encontrado algunos cocos mondados y rotos; que habían muchos cocos dañados; que cerca de la finca hay un poyal y dentro del poyal había muchos cocos sin que pueda hacer el cálculo de los que hubiese en el poyal porque no los contó y ser un poyal extenso; que el mar cuando el ciclón de San Felipe se metió en la finca del Sr. Busó y llegó hasta el poyal . . . que debido a que los cocos habían sido mondados antes del ciclón y estaban tapados con pencas y gaspachos y el mismo viento de San Felipe les quitó las pencas y los gaspachos, y el agua que entró por los bajíos cogió los cocos y los regó por la finca y no dejó amontonado ninguno. Que le consta al declarante que antes del ciclón de San Felipe había cocos mondados en la finca del Sr. Busó, sin que pueda decir el número de cocos que había, pero sí que eran muchos los cocos mondados y se encontraban tapados con pencas y gaspachos; que los cocos amontonados, con el agua y el viento se regaron por la finca y el sol los rajó, porque los cocos, una vez mondados no se pueden dejar ni dos horas al sol que si no se rajan.''

Con excepción de las afirmaciones del demandado en su declaración en el juicio y en su carta de tres de octubre de 1928, ninguna prueba existe en los autos sobre el hecho de que se hubiera acordado entre las partes contratantes que una vez celebrado el contrato los cocos quedaran por cuenta y riesgo del comprador. El testimonio presentado por el demandado sobre la llamada costumbre del lugar, no sostiene su afirmación. Su propia prueba demostró además que no existía una regla fija, vendiéndose de diferente modo como en el caso de los palmares de la Central Fajardo. Por supuesto, que si después de ordenada la monda de los cocos, el comprador sin motivo justificado hubiera rehusado recibirlos, su responsabilidad sería clara, pero ése en verdad no es aquí el caso.

Por lo que se desprende de la prueba, el contrato se verificó así: compra de sesenta y cinco mil cocos a $21.50 el millar, pagando el vendedor los gastos de tumba y monda y el comprador los de selección, recibo y envase y los de transporte desde la finca.

¿Cuándo debían entenderse entregados los cocos vendidos? A nuestro juicio cuando una vez mondados, eran se-

leccionados y recibidos por el ' comprador. Entonces su propiedad pasaba definitivamente al comprador.

¿Se fijó por las partes una fecha exacta para la entrega al celebrarse el contrato a principios de agosto de 1928? Ninguna a nuestro juicio. En tal caso se sobreentendía que el término de entrega debía ser uno razonable que garantizara los derechos de ambas partes.

La correspondencia cruzada entre las partes revela que el comprador fué dilatando el recibo, seguramente para ajustarlo a su conveniencia, pero siempre lo hizo comunicándose con el vendedor y aceptando éste expresa o implícitamente la dilación aunque tratando de que no se extendiera demasiado.

Llegó finalmente el 6 de septiembre y el comprador comunicó al vendedor que pensaba embarcar los cocos el 17, suplicándole que el *martes* de la *entrante semana* se diera principio a la monda, procurando Guerra estar en su finca dos días después de comenzada la monda, o sea el *jueves*.

De acuerdo con esa comunicación, no hay duda alguna que el vendedor pudo comenzar y parece que comenzó su tarea el martes sin que pueda asegurarse el número de cocos que llegó a mondar. ¿Cumplió el comprador enviando a Guerra el jueves? Consultados los almanaques, resulta que fué ese jueves el trece de septiembre en que ocurrió el terrible huracán de San Felipe. Por un acto de Dios aunque hubiera querido no le hubiera sido posible cumplir su promesa al comprador.

¿Cuáles fueron las consecuencias del desastre en relación con los cocos y cuál la reacción de las partes en cuanto a sus respectivas obligaciones?

El viento, la lluvia y el mar debieron ocasionar necesariamente la pérdida de millares de frutas, pero no hay un dato exacto y a virtud de las propias cartas del demandado se desprende que el daño mayor consistió en que los cocos fueron regados por la finca. La práctica es amontonarlos y

los montones fueron deshechos yendo a parar los cocos a diversos sitios.

"Para poder recoger nuevamente los cocos que les vendí y que reguereteó el ciclón, tengo que hacer varios trabajos de limpieza", le dice el vendedor al comprador el 17 de septiembre, y le pide que le sitúe quinientos dólares a cuenta del precio porque tenía que reconstruir casitas y ranchos y todo costaba el doble, comunicándole poco después que de la recogida efectuada era probable que los cocos pasaran de noventa mil, proponiéndole que le comprara el exceso.

De esas manifestaciones se deduce claramente que el vendedor reconocía que no había verificado la entrega y que se consideraba obligado a verificarla para lo cual se estaba preparando.

Congruente con esa actitud del vendedor está la del comprador que mandó él mismo a recoger los cocos invirtiendo en ello la suma de $221.

¿Cuándo surgió la diversidad de criterios entre uno y otro? No consta con toda claridad. Quizá el comprador debió ser más considerado con el vendedor en atención a que si él no hubiera dilatado tanto el recibo, éste hubiera tenido lugar antes del huracán y debió avenirse a pagar el todo o parte de los gastos de la nueva recogida y amontonamiento, siendo esa conducta la causa de la nueva actitud del vendedor; quizá si lo que movió a éste a adoptarla fué la carta de Biascochea ofreciéndole pagar algunos dólares más por cada millar de cocos que le vendiera. Nada puede asegurarse con certeza. Y limitándonos a los hechos mismos, tenemos que reconocer que los cocos jamás fueron entregados antes del ciclón y que teniendo el vendedor oportunidad de entregarlos después y habiendo actuado en los primeros días como si estuviera preparado para hacerlo, se negó luego a ello sin motivo justificado.

Siendo ello así, la sentencia que lo condenó a devolver los cuatrocientos dólares que recibiera a cuenta del precio y los doscientos veinte y uno gastados por la demandante en

un trabajo que le correspondía, es la justa y procedente. No existe, pues, el primer error señalado.

El segundo error se refiere al cometido por la corte al admitir como prueba cierto documento firmado por Pedro Mulero, como capitán del balandro "Carmen María", acusando recibo de cierta cantidad pagádale por la demandante por falso flete y haciendo constar que el balandro fué fletado por la demandante para ir a cargar trescientos sacos de cocos de la finca del demandado y no pudo verificarlos por no estar la carga dispuesta.

Se opuso el demandado por no ser el documento la mejor evidencia y constituir prueba de referencia. Mulero no compareció.

No se trataba de un simple recibo. Por él se pretendió demostrar la ocurrencia de hechos que de ser ciertos demostrarían que el demandado había dejado de cumplir el contrato. Y esos hechos no podían demostrarse de tal modo. Debió traerse a declarar la persona que redactó y firmó el documento, dándose oportunidad de repreguntarla.

Además, después de un estudio de toda la prueba sobre el particular, nos parece dudosa la existencia de ese gasto. Debe eliminarse la partida.

En cuanto al tercero y último señalamiento de error, no se necesita de esfuerzo alguno para concluir que no existe después de lo dicho con motivo de la discusión del primero. El vendedor no tiene derecho a reclamar al comprador el precio de la venta porque no le entregó la cosa vendida pudiendo hacerlo y tampoco tiene derecho a reclamar la extraordinaria cantidad de daños y perjuicios que reclama porque el embargo que la demandante practicó sobre los cocos que existían en su finca para asegurar la efectividad de la sentencia que pudiera dictarse en este pleito fué legal y no vicioso.

*Por virtud de todo lo expuesto, debe resolverse el recurso modificando la sentencia apelada eliminando de ella la par-*

*tida de treinta dólares del falso flete, y así modificada, con-*
*firmarse.*

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF

Mi idea es que antes del ciclón no surgió en el vendedor demandado deber alguno de entregar los cocos. La prueba fué clara en el sentido de que hasta esa fecha la demora, según demostró la correspondencia, se debió enteramente a la súplica del comprador demandante. El vendedor fué temporalmente relevado de la necesidad de entregar. La demora en la entrega, aunque consentida, a mi juicio era a riesgo del comprador. Las posibilidades conectadas con esa demora son complicadas, v. g., véase 55 C.J. 469, y no pretendo determinar cuáles hubieran sido las consecuencias si el vendedor hubiera insistido en un cumplimiento de acuerdo con el convenio de las partes. En realidad el vendedor no recabó sus derechos y aparentemente no hizo gestiones para entregar lo que podía o lo que quedó como resultado del temporal. Los cocos que quedaron no fueron mondados y amontonados listos para la entrega. En verdad, la evidencia tendió a demostrar que el vendedor se negó a entregar o abandonó cualquiera idea de entrega al comprador. Aparentemente tenía otro plan en mente.